# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PROSPERO TIRE EXPORT, INC., MULTI RECYCLING & MANUFACTURING CORP., JDJ RECYCLING GUAYAMA, CORP., **Plaintiffs**, v. MAERSK LINE A/S; CYBERCAM, INC.; WESTSIDE EXPORTS, LLC, **Defendants**. | CIVIL NO. 18-1015(RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is co-defendant Maersk Line A/S's *Motion to Transfer Venue to the U.S. District Court for the Southern District of New York* (Docket No. 31). After carefully reviewing the parties' arguments, the documents on record and the applicable law, the Court hereby **GRANTS** Defendant Maersk's *Motion to Transfer Venue*. Thus, this case shall be transferred to the United States District Court for the Southern District of New York.

## I. BACKGROUND

The present case arises from Plaintiffs' Prospero Tire Export, Inc., Multi Recycling and Manufacturing Corp. and JDJ Recycling Guayama Corp.'s attempt to export nearly 150 containers

bearing recycled tires from the Port of San Juan. In a nutshell, the *Amended Complaint* avers that:

- Plaintiffs entered into verbal freight brokerage agreements with Cybercam and Westside for the shipment of recycled tires. (Docket No. 18 ¶ 13);

- Under the terms of the freight brokerage agreements, Cybercam and Westside were responsible for finding a buyer (consignee) for Plaintiffs' scrap tires, tendering the tires to an ocean freight company, and managing the shipment from origin to destination, amongst other obligations. In return, Cybercam and Westside would earn a commission. (Docket No. 18 ¶¶ 13-14);

- In turn, Cybercam and Westside contracted with Maersk Line A/S to perform the actual carriage by sea of the goods to foreign ports. (Docket No. 18 ¶ 15);

- Between June 21, 2016 and September 14, 2016, Maersk issued seventeen (17) booking confirmations covering 152 containers. Three (3) of the shipments were booked by Westside and the rest were booked by Cybercam. (Docket No. 18 ¶ 26);

- Maersk took the containers but never delivered them to consignees in foreign ports; (Docket No. 18 at ¶ 149);

- Cybercam and Westside failed to follow up with Maersk or find a substitute carrier to ensure delivery of the containers. (Docket No. 18 ¶¶ 157-158).

Premised on the foregoing allegations, the *Amended Complaint* purports to aver tort claims against all Defendants and claims for breach of contract against Cybercam and Westside only. (Docket No. 18 ¶¶ 147-159). Lastly, the *Amended Complaint* seeks damages from

Maersk, Cybercam and Westside in excess of $1,000,000. (Docket No. 18 ¶ 159).

On October 23, 2018, Maersk moved to transfer the case to the United States District Court for the Southern District of New York based on Clause 26 of Maersk's standard "Terms and Conditions of Carriage." (Docket No. 31). Said terms and conditions contain a forum selection clause which vests exclusive jurisdiction in the Southern District of New York over disputes relating to bills of lading for shipments to and from the United States. (Docket No. 31-1 at 3). Both Westside and Plaintiffs filed motions opposing Maersk's Motion to Transfer on November 9 and November 21, 2018, respectively. (Docket Nos. 39 and 42). Maersk replied on December 3, 2018. (Docket No. 44).

The case was transferred to the undersigned on June 13, 2019. (Docket No. 49). The Court issued two orders directed at all Plaintiffs requiring them to show cause as to why the *Amended Complaint* should not be dismissed with regards to Cybercam for failure to serve process within the 90-day term in Fed. R. Civ. P. 4(m) and the extension granted by the Court which expired on June 29, 2018. (Docket Nos. 50 and 55). In light of Plaintiffs' failure to comply with both orders to show cause, the Court dismissed the Complaint as to Cybercam on August 14, 2019. (Docket Nos. 56 and 57).

In their oppositions to Maersk's Motion to Transfer, both Co-defendant Westside and Plaintiffs argue that they are not bound by Maersk's forum selection clause. (Docket Nos. 39 and 42). Plaintiffs also contend that the forum selection clause is unenforceable because it does not encompass their claims sounding in tort, it is unreasonable under the given circumstances, and contrary to public policy. (Docket No. 42). The Court cannot agree for the reasons set out below.

## II. APPLICABLE LAW

### A. Admiralty Subject Matter Jurisdiction:

Plaintiffs invoked the Court's admiralty jurisdiction under 28 U.S.C. § 1333 which provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> **(1)** Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
>
> **(2)** Any prize brought into the United States and all proceedings for the condemnation of property taken as prize.

Federal courts have admiralty jurisdiction "when the subject matter of a contract which underlies a case or controversy is maritime in nature." Acadia Insurance Co. v. McNeil, 116 F.3d 599, 601 (1st Cir. 1997). Generally, the existence of admiralty jurisdiction "depends upon the nature of the transaction." Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 476 (1922).

Therefore, contracts for transport of goods by sea are maritime in nature even if they call for some performance on land. *See* Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 24(2004).

### B. Forum Selection Clauses and Transfer Under 28 U.S.C. § 1404:

Pursuant to the Supreme Court of the United States' seminal opinion in M/S Bremen v. Zapata Offshore Co., "[t]he prevailing view towards contractual forum selection clauses is 'that such clauses are prima facie valid unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" Silva v. Encyclopedia Brittannica, Inc., 239 F.3d 385, 386 (1st Cir. 2001) (*quoting* M/S Bremen v. Zapata Offshore Co., 407 U.S. 1, 10 (1972)). To defeat the enforcement of a forum selection agreement, a party must show that the particular clause:

> 1) was not freely negotiated or was the result of fraud;
>
> 2) contravenes a strong public policy of the forum where the suit is brought; or 3) the party challenging its enforceability shows that trial in the contractual forum will be gravely difficult and inconvenient that it will, for all practical purposes, be deprived of its day in court. Intercall Telecommunications v. Instant Impact, Inc., 376 F. Supp. 2d 155, 159 (D.P.R. 2005).

When a forum selection clause provides for a federal forum, the appropriate enforcement mechanism is 28 U.S.C. § 1404(a). *See* Atlantic Marine Const. Co. v. U.S. District Court for the Eastern District of Texas, 571 U.S. 49, 59-60 (2013). This section of the Judicial Code of the United States is a codification of the *forum*

*non conveniens* doctrine which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The presence of a valid forum of choice clause alters the usual § 1404(a) analysis in three ways:

> First, the **plaintiff's choice of forum merits no weight**, and the plaintiff, as the party defying the forum-selection clause, has the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. Second, **the court should not consider the parties' private interests** aside from those embodied in the forum-selection clause; it may consider only public interests. […] Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) **transfer of venue will not carry with it the original venue's choice-of-law rules**. Atlantic Marine Const. Co., 571 U.S. at 63-64. (emphasis added).

Consequently, a district court may only consider arguments about public factors and "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." Id. Among the public-interest factors district courts may consider are court congestion and the ensuing administrative difficulties, the interest in having localized controversies decided locally, and the interest in having diversity cases tried in a forum at home with the law. Id., at n. 6 (*quoting* Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n. 6. (1981)).

## III. ANALYSIS

### A. Westside is bound by the forum selection clause in Clause 26 of Maersk's standard Terms and Conditions of Carriage:

Westside's contention that it is not bound by the forum selection clause in Clause 26 of Maersk's standard Terms and Conditions is meritless. Westside booked directly three (3) of the shipments which are the object of the Complaint. (Docket No. 18 ¶ 26). Maersk then issued Booking Confirmations Nos. 957848797, 957804811 & 957757023 between August 31, 2016 and September 7, 2016. (Docket Nos. 18 ¶¶ 54, 60, 61; 20 ¶¶ 38, 40, 41; and 31-1 at 2). The booking confirmations incorporated by reference Maersk's standard Terms and Conditions of Carriage and indicated the website where such terms and conditions could be found in their entirety by stating:

> -This booking and carriage are subject to the Maersk Line Terms and Conditions of Carriage which are available upon request from the carrier or his representatives and are furthermore accessible on the Maersk Line website (http://www.maerskline.com) under "Services"/"General Business Terms." (Docket Nos. 20 ¶¶ 38, 40, 41; 31-1 at 2).

As a common carrier operating in the United States, Maersk was required to publicize its terms and conditions of carriage. *See* Ana Distribution, Inc. v. CMA-CGM (America) Inc., 329 F.Supp.2d 565, 567 (S.D.N.Y. 2004); 46 U.S.C. §40501. Maersk's standard Terms and Conditions are incorporated into Maersk's booking

confirmations and bills of lading and they are published on line. (Docket No. 31-1 at 14).

Clause 26 of Maersk's standard "terms and conditions" vests **exclusive** jurisdiction in the Southern District of New York over disputes relating to bills of lading for shipments to and from the United States and reads as follows:

> For shipments to or from the U.S., any dispute relating to this bill of lading, shall be governed by U.S. law and the United States Federal Court for the Southern District of New York is to have exclusive jurisdiction to hear all disputes thereof. (Docket No. 31-1 at 3).

While bills of lading were issued for only four (4) of the shipments, the terms and conditions, which include the forum selection clause, were incorporated by reference into the booking confirmations. (Docket No. 31-1 at 13-14). Moreover, Maersk presented unrefuted evidence that bills of lading would have been issued in the ordinary course of business. (Docket No. 31-1 at 14). Both circumstances are sufficient to incorporate the terms of the bill of lading into the parties' contract. *See* A.P. Moller-Maersk v. Ocean Express Miami, 550 F.Supp.2d 454, 468 (S.D.N.Y. 2008); Berkshire Knitting Mills v. Moore-McCormack Lines, Inc., 265 F.Supp. 846, 848 (S.D.N.Y. 1965); Luckenbach S.S. Co. v. Am. Mills Co., 24 F.2d 704, 705 (5th Cir. 1928).

Westside's opposition to Maersk's *Motion to Transfer* **did not** dispute that it booked the shipments. **It also did not dispute the content of the booking confirmations, the availability of the**

**Standard Terms and Conditions on Maersk's website or the fact that Clause 26 contains the forum selection clause**. (Docket No. 31).

Moreover, Westside is also bound by the forum selection clause because it **repeatedly** booked shipments with Maersk, thus evincing a course of dealing in which Westside assented to Maersk's standard Terms and Conditions of Carriage including the forum selection clause. *See* K.K.D. Imports, Inc. v. Karl Heiz, Dietrich GmbH & Co. Intern. Expedition, 36 F.Supp. 2d 200 (S.D.N.Y. 1999)(finding that the receipt of forty-one (41) invoices containing a forum selection clause evinced course of dealing sufficient to bind plaintiff to the clause); Celtic Marine Corporation v. Basin Commerce, Inc., 2019 WL 3253966 (E.D. La. 2019) (holding that despite the parties' failure to sign a contract, the course of dealing established an agreement for barges and barge transportation services which included the forum selection clause); Cargo logistics v. North American Transport, 2011 WL 2003365 (W.D. Wash. 2011)(the parties treated as controlling an unsigned agreement and thus the course of dealing evinced the existence of the contract).[1]

---

[1] Because plaintiffs assert claims against Maersk arising from shipments booked by Cybercam, the Court notes that this former co-defendant **booked fourteen (14)** of the shipments at issue in the *Amended Complaint* and Maersk submitted the corresponding booking confirmations. (Docket Nos. 18 ¶¶ 28-53, 58-59 and 64-68; 31-1 at 17-27, 29 and 32-34). Those booking confirmations likewise incorporate by reference Maersk's standard Terms and Conditions of Carriage. (Docket No. 31-1 at 17-27, 29 and 32-34). Thus, the course of dealing pertaining to this former co-defendant is even more robust and Plaintiffs' claims arising from the shipments booked by Cybercam are also subject to the forum selection clause.

### B. Plaintiffs are bound by the forum selection clause in Clause 26 of Maersk's standard Terms and Conditions of Carriage:

Plaintiffs are bound by the forum selection clause contained in Clause 26 of Maersk's standard Terms and Conditions for the following reasons discussed below: (1) Plaintiffs' own allegations and ordinary agency principles, and (2) the "limited agency" doctrine recognized by the Supreme Court of the United States in Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14 (2004).

**First**, Plaintiffs' own allegations bind them to the forum selection clause in Maersk's standard Terms and Conditions of Carriage under ordinary agency principles. Pursuant to these principles, a "principal" agrees that another, an "agent", act on its behalf. *See* Restatement (Second) of Agency § 1 (1958) (March 2019 update). The agent's acts will bind the principal if the Court finds that the agent was granted authority, whether express or implied, to enter on the contractual relationship on the principal's behalf. Id. at § 7. In the case at bar, Plaintiffs' own allegations supply that authority. According to the *Amended Complaint*:

> Under the freight brokerage agreements, Cybercam's and Westside Exports' duties included, but were not limited to: finding a buyer (consignee) for Plaintiffs' scrap tires; **tendering the tires to an ocean freight company; managing the shipment from origin to destination**; making sure the consignee took possession of the cargo; paying the carrier; and providing Plaintiffs with the documents and/or certifications furnished by the end-use facility and the ocean freight company as required by the Puerto

> Rico Proper Scrap Tire Management Act. (Docket No. 18 ¶ 13) (emphasis added).

The quoted allegations above evince that Cybercam and Westside acted as Plaintiffs' freight forwarders and agents under the terms of the "brokerage contract." Cybercam and Westside were required to arrange shipments of Plaintiffs' tires. (Docket No. 18 ¶ 13). In exchange for their efforts as Plaintiff's agents, Cybercam and Westside earned a commission. (Docket 18 ¶ 14). In the maritime context, a freight forwarder or broker is a person that "arranges for the ocean transportation by locating available space, handles various documentation for the shipper's goods, including preparation of bills of lading, and performs such other services as arranging for the transport of the goods to dockside" in exchange for compensation. Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 10:7 (6th ed. 2018). Furthermore, District Courts have held that a freight forwarder "typically is an agent of the cargo owner, who is often the shipper." *See* Fubon Ins. Co. v. OHL Intern., 2014 WL 1383604, *6, n.4 (S.D.N.Y. 2014) (citing A.P. Moller-Maersk A/S, 550 F.Supp.2d at 465).

**Second**, Plaintiffs are also bound by the forum selection clause through the "limited agency" doctrine recognized by the Supreme Court of the United States in Norfolk Southern Railway Co.. In Kirby, the Supreme Court held in the context of multimodal container transport (as is the case here), "so long as a bill of

lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus it is a maritime contract." Kirby, 543 U.S. at 27. Moreover, the Supreme Court recognized the existence of "limited agency" when an intermediary contracts on behalf of a cargo owner with the carrier. Specifically, the Supreme Court found that:

> When an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed. The intermediary is certainly not automatically empowered to be the cargo owner's agent in every sense. That would be unsustainable. But when it comes to liability limitations for negligence resulting in damage, an intermediary can negotiate reliable and enforceable agreements with the carriers it engages. Kirby, 543 U.S. at 17.

The Supreme Court's rationale for creating the limited agency doctrine was the following:

> **First, we believe that a limited agency rule tracks industry practices.** In intercontinental ocean shipping, carriers may not know if they are dealing with an intermediary, rather than with a cargo owner. […]
>
> **Second, if liability limitations negotiated with cargo owners were reliable while limitations negotiated with intermediaries were not, carriers would likely want to charge the latter higher rates.** A rule prompting downstream carriers to distinguish between cargo owners and intermediary shippers might interfere with statutory and decisional law promoting nondiscrimination in common carriage. […]
>
> **Finally, as in *Great Northern*, our decision produces an equitable result.** […] Kirby retains the option to sue ICC, the carrier, for any loss that exceeds the liability limitation to which they agreed. Id. at 34-35 (emphasis added)

Nothing in the foregoing rationale requires limiting <u>Kirby</u>'s holding to limitation of liability clauses, known as "Himalaya" clauses, nor bars application of its "limited agency" doctrine to forum selection clauses. **Indeed, several courts have extended <u>Kirby</u>'s limited agency doctrine to forum selection clauses**. *See* <u>GIC services LLC, v. Freightplus (USA), Inc.</u>, 2013 WL 6813878 (S.D. Texas Houston Div. 2013); <u>A.P. Moller-Maersk</u>, 550 F.Supp.2d at 465-66 ; <u>Laufer Group Int'l v. Tamarack Industries, LLC</u>, 599 F.Supp.2d 528, 531 (S.D.N.Y. 2009).

Taking a different tack, the Southern District of New York has relied on both <u>Kirby</u> and pre-<u>Kirby</u> precedent to hold that "an intermediary serves as the upstream merchant's agent for the purposes of agreeing to litigate in a particular forum" in part because of the <u>Kirby</u> Court's concern with the importance of the courts providing a predictable legal backdrop for parties' contractual arrangements. <u>Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A.</u>, 2013 WL 316151, *4 (S.D.N.Y. 2013).

All roads lead to the conclusion that Plaintiffs were bound to the forum selection clause because of Cybercam and Westside's dealings with Maersk regarding the shipment of Plaintiffs' scrap tires.

### C. The forum selection clause encompasses plaintiffs' claims regardless of whether they sound in contract or in tort:

The forum selection clause in Clause 26 of Maersk's standard Terms and Conditions of Carriage vests exclusive jurisdiction in the Southern District of New York in "any dispute relating to this bill of lading". (Docket No. 31-1 at 89). This language indicates a broad forum selection clause which encompasses both contract and tort claims. There exists a consensus amongst courts that "forum selection clauses **can be equally applicable to contractual and tort** causes of action." Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988) (citations omitted) (emphasis added). In order to determine if a forum selection clause applies to tort claims, courts must analyze whether the claims, and their resolution, are related to the "interpretation of the contract" or "to the rights and duties enumerated in […] the contract." Id.

The First Circuit has held that generally, "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993). Additionally, in Lambert, the First Circuit explicitly warned that courts cannot "reward attempts to evade enforcement of forum selection agreements through 'artful pleading of [tort] claims' in the context of a contract dispute." Id. at 1121 (quoting Pascalides v. Irwin Yacht Sale North, Inc., 118

F.R.D. 298, 301 (D.R.I. 1988)). Thus, Plaintiffs cannot sidestep the forum selection clause by casting their claims against Maersk as sounding in tort.

It is worth noting that District Courts have applied the aforementioned extension of forum selection clauses in analogous cases to the one before the court. In Kelso Enterprises, Ltd. v. M/V Wisida Frost, the District Court found that the forum selection clause applied to Plaintiffs' tort claims stemming from the delivery of cargo, i.e. the purpose of the contract, because they were directly related to the bills of lading. Kelso Enterprises, Ltd. v. M/V Wisida Frost, 8 F. Supp. 2d 1197, 1207 (C.D. Cal. 1998). Additionally, the Court held that "Defendants' liability for its alleged deviation and subsequent conduct with regard to Plaintiffs' cargo necessarily relates to the interpretation of rights and duties set forth in the bills of lading and related contracts that govern the agreement between Plaintiffs and Defendants for the stowage and delivery of the [cargo]." Id. *See also* Diesel Props S.r.L. v. Greystone *Business Credit II LLC*, 2008 WL 4833001 (S.D.N.Y. 2008) (finding that tort claims were connected with the Distribution Agreements and subject to the forum selection clause therein).

   **D. Enforcement of the clause is not unreasonable:**

Plaintiffs contend that the forum selection clause is unenforceable because it is the product of "Maersk's overwhelming

bargaining power." (Docket No. 42 at 9). However, as correctly noted by Maersk, Courts will rarely set aside forum selection clauses based on disparity in the parties' bargaining power. (Docket No. 44 at 11). Instead, courts routinely enforce forum selection clauses in both cargo and passenger transport cases. *See e.g.*, M/S Bremen, 407 U.S. 1 (1972); Caribbean Distributors, Inc. v. Echo, Inc., 206 F. Supp. 2d 263, 267-268 (D.P.R. 2002) (finding that a forum selection clause between Echo, a multi-million dollar manufacturing company, and a small family-owned company was valid, despite Echo refusing to negotiate the clause and the disparity in the parties' bargaining power); Carnival Lines v. Shute, 499 U.S. 585 (1991) (enforcing forum selection clause in cruise ship passenger ticket); González-Martínez v. Royal Caribbean Cruises, 94 F. Supp. 3d 147, 154—155 (D.P.R. 2015)(same). If Courts enforce selection clauses as to natural persons who went on vacation because such clauses are part of the standard terms and conditions of cruise ship tickets, they can certainly enforce such clauses as to Plaintiffs who are exporters that, by their own allegations, caused Cybercam to book over 500 shipments with Maersk. (Docket No. 18 at ¶ 19).

Plaintiffs also allude to the inconvenience for them of a New York forum. (Docket No. 42 at 10-13). However, as noted above, the presence of the forum selection clause means that the Court need not consider the private factors such as the convenience of the

parties or witnesses. *See* <u>Atlantic Marine Const. Co.</u>, 571 U.S. at 63-64 ("[W]hen a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its "venue privilege" before a dispute arises.").

**E. The public factors do not thwart enforcement of the forum selection clause in this case:**

**The administrative difficulties flowing from court congestion favor transfer to the Southern District of New York**. This occurs in part because the "District Court of Puerto Rico has one of the most congested criminal and civil dockets in the nation." *See* <u>Gibson v. Ecoquest, Inc.</u>, 2017 WL 2859744, *5 (D.P.R. 2017); *see also* <u>Marquez v. Drugs Unlimited, Inc.</u>, 737 F. Supp. 2d 66, 68 (D.P.R. 2010) ("In this extremely congested district, both on the civil and criminal dockets, it is [...] extremely important for the court to effectively manage its caseload.").

**Moreover, familiarity with the applicable law does not weigh in favor of keeping this case in Puerto Rico**. Generally, with admiralty jurisdiction, comes the application of "substantive admiralty law". <u>Yamaha Motor U.S.A. v. Calhoun</u>, 516 U.S. 199, 206 (1996). The Port of New York and New Jersey is a place with high maritime activity and the Southern District of New York's familiarity with maritime law is beyond question.[2] The familiarity

---

[2] Total May 2019 volume at the Port of New York and New Jersey was 643,706 TEUs. *See* Port of New York and New Jersey, *May Cargo Volume Numbers Continue to Make*

of the forum with the applicable law is a neutral factor when the transferee court is a District Court in a place with significant maritime activity. *See* U.S. United Ocean Services LLC v. Powerhouse Diesel, 932 F. Supp. 2d 717, 734 (E.D. La. 2013) (case under 28 U.S.C. § 1404).

Maritime law does not automatically displace state law. *See* Yamaha Motor U.S.A. v. Calhoun, 516 U.S. at 206. However, the fact that Puerto Rico law *might* still apply in some respects **does not bar transfer** of this action to the Southern District. Recently, the Southern District has dealt with diverse issues of Puerto Rico law. *See e.g.*, In re LIBOR-Based Financial Instruments Antitrust Litigation, 2019 WL 1331830 (S.D.N.Y. 2019) (Denying reconsideration of dismissal of claims due to statute of limitations under Puerto Rico law); Barza Development Corp. v. Meister Seelig & Fein LLP, 2018 WL 2356664 (S.D.N.Y. 2018)(Case involving a *culpa in contrahendo* claim under Puerto Rico Law); Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp, 101 F.Supp.2d 236 (S.D.N.Y. 2000)(case under the Puerto Rico Dealers Act, Law No. 75-1964).

---

*Gains at the Port of NY and NJ*, https://www.portbreakingwaves.com/may-cargo-volume-numbers-continue-to-make-gains (Last visited on Aug. 29, 2019). TEU stands for twenty-foot equivalent unit, "a standard measure for a container for transporting goods, used to calculate how many containers a ship can carry, or a port can deal with." Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/teu. (Last visited on Aug. 29, 2019).

**There is no public policy that would require keeping the case in the District of Puerto Rico**. While Plaintiffs pointed to Puerto Rico's public policy in favor of reducing solid waste, that policy does not forbid forum selection clauses. (*See* Docket No. 42 at 10-12). Moreover, Plaintiffs did not bring any Puerto Rico statute forbidding the enforcement of the forum selection clause in this case to the Court's attention. Even if they had, it would be to no avail as the 28 U.S.C. § 1404(a) would supersede it. *See* <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 32 (1988) (holding "that federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case," despite Alabama's statute hostile to forum selection clauses). Accordingly, Courts in the District of Puerto Rico consistently enforce choice of forum clauses even where a specific statutory prohibition of choice of forum selection clauses exists. *See e.g.*, <u>Vitalife, Inc. v. Omniguide, Inc.</u>, 353 F.Supp.3d 150 (D.P.R. 2018) (collecting cases).

### IV. CONCLUSION

"When parties have contracted in advance to litigate disputes in a particular forum, courts **should not unnecessarily disrupt the parties' settled expectations** […] In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain." <u>Caribbean Restaurants, LLC v. Burger</u>

King Corporation, 23 F.Supp. 3d 70, 78 (D.P.R. 2014) (*quoting* Atlantic Marine Const. Co. v. U.S. District Court for the Eastern District of Texas, 571 U.S. at 66) (emphasis added). **This is not an unusual case.**

For the reasons set forth herein, defendant Maersk Line A/S's *Motion to Transfer Venue to the U.S. District Court for the Southern District of New York* (Docket No. 31) is hereby **GRANTED**. The Clerk shall transfer this case to the United States District Court for the Southern District of New York. This case is now closed in the District of Puerto Rico for statistical purposes.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 30th day of August 2019.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge